# Wright's Appeal.

A testator died February 18th 1875, leaving a will dated October 18th 1873, wherein he directed, inter alia, as follows: "I have loaned sundry amounts of money to my children, as hereinafter set forth, which loans I wish to be considered as advances, and to be taken as money due from them to me, and in the distribution of my estate amongst them to be deducted from his, her or their share thereof. To this time I have loaned to my * * * son, John C. Wright, $7200. * * * Should I make any further advances to them, or any of them, I will charge the same in my memorandum or account book as heretofore." No such memorandum book was ever found. When the will was made the testator held the bond of his son, John C. Wright, for $3500, dated January 23d 1869, payable in three years. The executors of testator in their account included John's bond as assets of the estate, and contended that he should be charged with the amount of the bond as well as the sum charged in the will, which contention the court sustained. *Held*, that this was error; that it was the purpose of the testator to make the charge for advances substantially equal to the debt John owed him; that the word "loaned" and the word "advanced" were used interchangeably; that the bond should be treated as an advancement, and that the charge against John for advancements should be limited to $7200.

January 19th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, and STERRETT, JJ. GREEN, J., absent.

[Wright's Appeal.]

Appeal from the Orphans' Court of *Philadelphia county:* Of July Term 1879, No 22.

Appeal of John C. Wright from the decree of the court in the adjudication of the executors' first account in the matter of the estate of Isaac K. Wright, deceased.

The testator, Isaac Wright, died February 18th 1875. By his will, dated October 18th 1873, he directed, inter alia, as follows: "I have loaned sundry amounts of money to my children and some of my grandchildren, as hereinafter set forth, which loans I wish to be considered as advances to them, and to be taken as money due from them to me, and in the distribution of my estate amongst them to be deducted from his, her or their share thereof.

"To this time I have advanced to my daughter, Sarah Kenderdine, the sum of three thousand dollars; to my daughter Mary W. Marple, four thousand four hundred dollars; to my daughter Rachel, eighteen hundred dollars; to her children, Elizabeth Mason, five hundred dollars; James F. Mason, one hundred dollars; Joseph H. Mason, three hundred dollars.

"To my son, David H. Wright, the sum of four thousand dollars, which sum I direct shall be deducted from his children's share; to my son, John C. Wright, seven thousand two hundred dollars; to my son, George Wright, four thousand dollars; and to my daughter, Tacy Ann, wife of Samuel B. Chapman, three thousand dollars. Should I make any further advances to them, or any of them, I will charge the same in my memorandum account-book as heretofore."

When the will was made the testator held notes of his son George, dated April 8th 1869, at ten days from date, one for $2554.89 and the other for $650. These notes had been given in place of other notes held by testator against his son, given in part, and it would seem chiefly for moneys loaned, and in part for coal sold; but the exact proportions of loan or sale did not appear.

He also held the bond of his son, John C. Wright for $3500, dated January 23d 1869, payable in three years, with John Russell as surety. This bond was given for the purchase of one-half of testator's interest in the coal business, carried on in the name of I. K. Wright & Son; the other half being purchased at the same time by his son-in-law, Samuel B. Chapman, who gave a similar bond, with the same surety. By a codicil dated February 6th 1874, the amount charged to his daughter, Mrs. Marple, was reduced from $4400 to $400. A later codicil, dated September 9th 1874, republished the will as of that date without further change as to the advancements. Upon George's notes an endorsement, in the testator's handwriting, stated that interest had been paid in full to October 8th 1870. Another endorsement, also in his handwriting, was as follows: "No more interest to be charged on the within notes. 2 Mo. 4, 1875. I. K. Wright." This date was

[*Wright's Appeal.*]

just two weeks earlier than that of his death.  No memorandum-book, such as that spoken of in the will, was ever found.  The executors appointed were testator's sons, John and George, and his sons-in-law, Samuel B. Chapman and Joseph R. Kenderdine.  The two last-named executors claimed that the provisions in the will were intended to embrace such indebtedness only as arose from loans not endorsed by note or other security; and that it did not include, for this reason, the notes and bond above mentioned, which were, therefore, and also because they did not represent loans, to be charged against George and John respectively, in addition to the sums mentioned in the will as chargeable to them.  They accordingly (John and George not assenting to the right so to do) included the notes and bond in the inventory, and introduced them into the account as part of the assets of the estate, to be charged in distribution to the debtors.  Interest on the bond was paid for some time after testator's death (to February 1st 1877); no interest was paid on the notes after the date of the first endorsement.

The auditing judge, Penrose, J., in an opinion, inter alia, said: "Taken literally, and in its narrowest sense, the language of the will would, perhaps, exclude all indebtedness to the testator except that which originated from a loan.  This would throw out the whole of John's bond and some part of George's notes.  But too minute a stress is not to be laid on the strict and precise signification of words.

"The object of the provisions in the will was doubtless to secure equality in the distribution of his estate, and to prevent controversy as to the amount of indebtedness with which each child was to be charged.  The object would be only partially accomplished, if not wholly defeated, if it was limited to a single species of indebtedness only.  The words 'loaned' and 'loans' occur only in the introductory part of the clause relating to the subject.  The word read in immediate connection with the charge is 'advanced,' which would include a gift or sale of property as well as money.  The bond of John was for a specific liquidated sum.  It was overdue for more than a year when the will was drawn.  It represented money, and it was not unnatural to speak of it as an advance or a loan, although in strictness such was not its character.

"John's circumstances were prosperous, and it does not appear that he stood in need of loans or assistance from his father.  Yet the amount charged to him is larger than what is charged to George, who had failed in business, and who was constantly receiving gifts or loans.  And it will be observed that the excess is just about the amount of this bond—the amount charged against Mrs. Marple, against Daniel and against George, being four thousand, while that against John is seven thousand two hundred.

"It seems extremely improbable that he should have 'loaned'

[Wright's Appeal.]

to John and taken no note or memorandum of the indebtness, so much more than he did to those of his children, who would naturally require more from him. It is clear, therefore, the testator intended to embrace John's bond in the amount charged to him."

Exceptions were filed to this adjudication, among which were the following: That the learned judge erred in declining to treat the said bond of John C. Wright as one of the assets of said estate, and in adjudging that said bond should not be charged against the said John C. Wright in addition to the loan of $7200 specified in decedent's will in the distribution of the estate; and in deciding that the said John C. Wright was not indebted to the said estate in the amount of said bond, to wit: $3500, with interest thereon from February 1st 1877, in addition to the loans made to him as mentioned in decedent's will.

The Orphans' Court sustained the exceptions to the adjudication, and made a decree that the amount of the bond of John C. Wright be restored to the debits in the account filed by the executors, Ashman, J., in an opinion, inter alia, saying:

"The legal intendment, as applied to wills, is that the testator uses technical words in their technical sense. And where, in the will itself, such technical words have a clearly defined object upon which to operate, no extrinsic evidence is allowed to be brought in to limit or extend their application. The authorities on this point are numerous; it is sufficient to refer to Yundt's Appeal, 1 Harris 575. In the present case, the testator says: 'I have loaned to my children, as hereinafter set forth, which loans I wish to be considered as advances to them.' And he immediately adds: 'To this time I have advanced * * * to my son, John C. Wright, $7200.' In language as accurate as can well be framed, the testator declares that the loans which he has made to his children are the sole subjects of advancements. It is proposed, however, to go outside of the will, and to make, as a part of the subject of this advancement, a debt due by one of the sons, which in no proper sense can be characterized as a loan. The bond of John, which is claimed to be embraced in the loans spoken of by decedent, was given in payment of a purchase from the father, and interest was regularly exacted upon it up to the date of decedent's death. It was not pretended that interest was demanded or paid upon a single loan. There is nothing in the mere relation of parent and child to impress upon this transaction a character which it certainly would not have borne as between strangers. As if to exclude such a presumption, the parties agreed upon an instrument in writing, which stamped the purchase by the son as the highest form of debt known to the law. He now seeks to annul the terms of his own bargain, and to give to a contract invested with peculiar solemnity, and accompanied with peculiar remedies, the character of a simple loan. The evidence which was offered for this purpose tended not

[Wright's Appeal.]

to explain, but to defeat the will of the testator, and the exceptions taken, therefore, must be sustained."

From the above decree this appeal was taken.

*Henry R. Edmunds*, for appellant.—The plan of this will is plainly an endeavor by the testator to distribute his whole estate among the beneficiaries equitably. When he made the will, he says that he could not make this equitable distribution until he first turned to his account book, and ascertained what each beneficiary owed him. In that book there was charged to John C. Wright, the appellant, the sum of $7200, and the testator directs that John shall have one-seventh of his estate, less this sum of $7200.

It is now sought to charge John with $3500 additional, because, as it is alleged, this $3500 was secured by a bond given for one-half of testator's business, and it was therefore a debt; but the other son's indebtedness (that of George) was secured by promissory notes, given partly for merchandise sold, and yet this court has already decided, Wright's Appeal, 8 Norris 67, that the testator intended that George's indebtedness should be included in the amount charged to his share in the will, notwithstanding the technical language of the will.

Technical rules of construction must yield to the express intention of the testator : Reck's Appeal, 28 P. F. Smith 432; Musselman's Estate, 5 Watts 9; Schott's. Estate, 28 P. F. Smith 40 ; Middlewarth's Adm'rs *v.* Blackmore, 24 P. F. Smith 414.

*George W. Thorn* and *Joshua Pusey*, for appellees.—The testator did not intend the amount of the bond in question to be an advancement. He meant it to be a debt to be paid him sooner or later. It was a most solemn obligation, rendered the more important by the taking of security for its payment. That its character and importance had not escaped his memory at the time the will was made and afterwards, is evidenced by the fact that he required interest to be paid on the bond up to the last semi-annual payment preceding his decease. It is submitted that the consideration of the bond for $3500 having not been a loan or advance, the onus of proving it to be within the terms of the will was cast upon the appellant. He offered no proof in the court below that it was one of the debts or loans referred to by the testator ; and in the absence of such proof it must be held that the testator's intention was to leave this bond as a debt unaffected by the provisions of the will, which meant to refer to advances of money simply.

Mr. Justice PAXSON delivered the opinion of the court, March 1st 1880.

This appeal is from the same decree as George Wright's Appeal,

decided at the last term in this district. The case will be found reported in 8 Norris 67. We are unable to see any substantial difference between the cases. They arise not only under the same will, but the same clause in the will. In George Wright's Appeal, the question was, whether the appellant's notes held by his father at the time of the death of the latter, were to be included in the sum charged in the will as advancements, or to be treated as assets in the hands of the executors. In the present case, the same question arises as to the bond of John C. Wright, also a son of the testator, for $3500.

We need not review the questions so carefully considered in the opinion of our late brother WOODWARD. It was contended, that the ruling in that case does not apply to the appeal of John C. Wright, because : 1. The bond in question was not a loan of money, but was given in payment of a business purchased by the appellant from his father; and, 2. The said bond was secured by one John Russell joining therein as co-obligor. Beyond this, there is no essential distinction between the cases.

We do not regard these matters as important. In George Wright's Appeal, the consideration in part for the notes was coal sold George by the testator. To this extent, they no more represented a loan of money than did the bond of John. And the fact that the latter had given personal security, does not affect the question of advancement. The bond was given to the testator several years before the will was made. The taking of security at that time may have been for prudential reasons, and is not inconsistent with his subsequent intention of treating the bond as an advancement.

It was said in the opinion of the court in Wright's Appeal : "It has been strongly urged on behalf of the appellees, that as the testator declared that he had 'loaned' certain moneys to his children and grandchildren, debts owing by them to him were not intended to be included in the amounts severally specified. But the word 'advanced' was used in immediate connection with the schedule, in which the appellant's liability to account in the distribution was declared. Besides, the notes were given mainly for money lent. They were in existence long before the will was executed, and the description of such moneys as 'loans' or as 'advancements,' was not absolutely inapt. Under all the circumstances surrounding these parties, and in the light of the precedents by which cognate questions have been settled, it must be held, that it was the purpose of the testator to make the charge for advances substantially equal to the debts the appellant owed him. The word 'loaned' and the word 'advanced,' were used interchangeably." This language applies with equal force to the present contention.

The amount of advancements charged by the testator to his son John (appellant) is $7200. To add to this the bond in suit, would

[Wright's Appeal.]

make John's indebtedness $10,700, a sum largely in excess of the testator's advancements to any of his other children. There are no circumstances in the case to account for this excess. On the contrary the auditing judge finds : " John's circumstances were prosperous, and it does not appear that he stood in need of loans or assistance from his father. Yet the amount charged to him is larger that what is charged to George, who had failed in business, and who was constantly receiving gifts or loans. And it will be observed, that the excess is just about the amount of this bond ; the amount charged against Mrs. Marple, against David and against George being four thousand, while that against John is seven thousand two hundred."

We need not pursue the subject further. The reasons given by the auditing judge of the court below, are ample to vindicate his decree, which in our opinion, should not have been set aside by the Orphans' Court. We repeat what was said in Wright's Appeal, that " while it cannot be said positively that any charge beyond $4000 (here $7200) would be unjust, it may be said positively, that such a charge would be unsafe."

> Decree reversed and the record remitted ; and it is now adjudged and decree, that in the re-distribution of the estate of Isaac K. Wright, deceased, the bond of John C. Wright, the appellant, for $3500, shall be treated as an advancement ; and that the charge against the said appellant for advancements be limited to $7200 ; and that the costs of this appeal be paid out of the funds of the estate.